**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Subchapter V |
| Companion Care Partners, LLC | ) | Case No. 25-11859 (djb) |
| Debtor. | ) | |

**MOTION OF DEBTOR-IN-POSSESSION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR-IN-POSSESSION TO USE CASH COLLATERAL AND GRANTING RELATED RELIEF**

Companion Care Partners, LLC (the "Debtor"), debtor-in-possession in the above-captioned case, hereby moves (the "Motion") the Court for entry of interim and final Orders, pursuant to sections 105, 361 and 363 of title 11 of the U.S. Code (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to use cash collateral to fund the Debtor's post-petition business operations as set forth below:

(a) authorizing the Debtor to use the cash collateral of its secured creditors;

(b) providing adequate protection to its secured lender, for the use of its cash collateral, as set forth more fully herein; and

(c) scheduling a final hearing ("Final Hearing") with respect to each of the foregoing matters.

In support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and the Motion is proper under 28 U.S.C. § 1408.

2

2. The statutory bases for the relief requested herein are sections 105, 361 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

### BACKGROUND

3. On May 9, 2025, (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). Debtor is operating its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Leona Mogavero, Esquire has been appointed Trustee in this Chapter 11 Case.

4. In support of this Motion, Debtor relies on the Declaration of James Grant in support of this motion (the GRANT Declaration").

### Business History

5. Debtor was founded in 2014, to provide home care services to elderly and disabled individuals in their homes with day-to-day activities.  On February 21, 2024, a cyberattack on Change Healthcare clearinghouse, a prominent player in the United States medical claims processing industry, had a profound impact on the healthcare sector. The incident, characterized by a ransomware attack, disrupted critical operations, including payment processing, and compromised patient data. While Change Healthcare services were restored after a period of nine months, the lingering effects of the attack continue to reverberate throughout the industry.

6.  The typical turnaround from billing to payment, prior to the cyberattack was six (6) weeks.

7.  As a direct result, a delay resulted in the Debtor -in-Possession's ability to pay its employees, usual its bills and affected its ability to bring on new clients.

8. The Debtor's principal, in order to make ends meet, used personal savings, credit cards and eventually merchant capital services through LG Funding in order to continue operating.

3

**DEBT**

According to the Debtor's books and records, the total outstanding alleged debt is approximately $1,458,000.00. Debtor believes that its secured debt is $690,000.00.

**NEED FOR USE OF POST-PETITION CASH COLLATERAL**

6. The Debtor has an immediate need as well as a continuing need for use of assets that may constitute secured creditors' cash collateral (the "Cash Collateral") to pay the expenses of operating its business including, without limitation, salaries, administrative and leasing costs, utilities, services, repairs, maintenance and insurance costs in its capacity as debtor-in-possession. Specifically, without use of post-petition Cash Collateral, the Debtor cannot pay wages, salaries, rents, utilities and other expenses associated with operating its business, and administrative expenses of this case.

7. The availability of the use of Cash Collateral will provide the Debtor with more than just the necessary cash it needs to operate its business. Of almost equal importance is the sense of confidence that such use of post-petition Cash Collateral will instill in the Debtor's suppliers, clients and employees. The failure of the Debtor's suppliers, clients and employees to cooperate with the Debtor at this time, and the potential attendant loss of employees and could result in deaths of clients who depend on the services of Debtor's employees for the independence to live at home rather than in a skilled medical facility and could irreparably harm the Debtor's hopes of maximizing the value of its assets and its chances as the life blood of the Debtor's business is its clients who often have a short life span.

8. In sum, without immediate use of post-petition Cash Collateral, the Debtor will continue to suffer the acute liquidity crisis that existed pre-petition and that threatens the Debtor's ability to maintain its operations in the short term. The ability of the Debtor to remain a viable entity and restructure under chapter 11 of the Bankruptcy Code is dependent upon the Debtor obtaining the

4

interim and final relief requested in this Motion.

9. The Debtor believes that, to the extent that secured creditors hold valid, perfected liens in all of the Debtor's Receivables, the secured creditors have will be paid from the receivables over time to satisfy the debt. While Debtor owns little property, its ability to use cash collateral to pay its employees will allow them to continue providing services that continue the cash flow of the business that will allow the Debtor to continue paying creditors in order to successfully satisfy its outstanding debts.

10. According to the Third Circuit Court of Appeals, "in determining whether a secured creditor's interest is adequately protected, most courts engage in an analysis of the property's 'equity cushion'—the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims," while ignoring junior liens. In re Indian Palms Assocs., Ltd., 61 F.3d 197, 207 (3d Cir. 1995). Courts have found a secured creditor adequately protected where either a sufficient equity cushion in the collateral exists to protect the secured creditor, or the level of the secured creditor's collateral is not decreasing over time. See, e.g., In re Aventine Inc., Case No. 09-11214 (KG), Hr'g Tr. at 244:15-24 (Bankr. D. Del. April 14, 2009) (approving contested use of cash collateral and prime debtor-in-possession financing based, in part, on existence of "a very sufficient equity cushion"); In re May, 169 B.R. 462, 472 (Bankr. S.D. Ga. 1994) (equity cushion in property may provide creditor with adequate protection of its interest, sufficient to permit the debtor to use cash collateral); In re Southwest Assocs., 140 B.R. 360, 66 (Bankr. S.D.N.Y. 1992) (same); In re Dynaco Corp., 162 B.R. 389,394 (Bankr. D. N.H. 1993) (secured creditor was adequately protected and debtor was authorized to use cash collateral where level of collateral was not declining).

11. Indeed, an equity cushion alone can constitute sufficient adequate protection. In re

5

Fortune Smooth (U.S.) Ltd., 1993 WL 261478, *6 (Bankr. S.D.N.Y. July 6, 1993). "An equity cushion . . . provides adequate protection if it is sufficiently large to ensure that the secured creditor will be able to recover its entire debt from the security at the completion of the case." In re Elmira Litho, Inc., 174 B.R. 892, 904 (Bankr. S.D.N.Y. 1994). Case law indicates an equity cushion of 20% or more is independently sufficient to provide adequate protection. See, e.g., In re C.B.G. Ltd., 150 B.R. 570, 573 (Bankr. M.D. Pa. 1992) (noting that an equity cushion of 20% or more constitutes adequate protection, less than 11% is insufficient, and a range of 12% to 20% has divided courts); see also In re Utah 700, L.L.C., 2008 WL 2654919, at *5-6 (Bankr. D. Utah July 3, 2008) (finding approximate 23% equity cushion in the debtor's assets which were primarily real property was substantial and provided significant protection to the prepetition lenders); In re 1606 New Hampshire Ave. Assocs., 85 B.R. 298, 310 (Bankr. E.D. Pa. 1998) (concluding that 20% equity cushion was sufficient to establish adequate protection under section 362(d)(1)). Even if the debtor's business operations are performing poorly, a bankruptcy court may grant use of cash collateral on an interim basis if a significant equity cushion exists. In re Pawtuxet Valley Prescription & Surgical Ctr., Inc., 2008 WL 1990887, at *5 (Bankr. D.R.I. Mar. 10, 2008) (permitting continued use of cash collateral, where debtor had not met any of its projections and management had made a series of poor business decisions, because the creditor continued to maintain a significant equity cushion).

## BASIS FOR RELIEF REQUESTED

12. The Debtor, pursuant to section 363(c)(2) of the Bankruptcy Code, hereby requests authority, immediately and on an ongoing basis, to use Cash Collateral and cash proceeds from the collection of any accounts receivable, to pay the expenses of operating its business and other administrative expenses during the pendency of this case. The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code, which provides in pertinent part:

If the business of the debtor is authorized to be operated under section 721, 1108, 1203,

6

      1204, or 1304 of this title and unless the court orders otherwise, the [debtor- in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

    13. Section 363(c)(2) permits the debtor in possession to use, sell or lease cash collateral only if either (i) each entity that has an interest in such cash collateral consents; or (ii) the court, after notice and hearing, authorizes such use, sale or lease in accordance with the provisions of this section. 11 U.S.C. § 363(c)(2). If the secured creditor does not consent to the use of its cash collateral, the Court can authorize the debtor to use such cash collateral under section 363(c)(2)(B) if the court determines that the debtors has provided "adequate protection" of the secured creditors' interests. 11 U.S.C. § 363(e). To the extent that the secured creditors do not consent to use of Cash Collateral, the Debtor submits that the secured creditors are adequately protected by the equity cushion.

    14.  Unless the Debtor obtains approval of its Motion for continuing Court authorization to use Cash Collateral pursuant to section 363 of the Bankruptcy Code for the purposes requested, the Debtor and its assets will suffer immediate, continuing and irreparable harm.

    15.  Pending the final hearing, the Debtor requires immediate interim use of Cash Collateral for those items set forth in the Budget, among other things, the purchase of supplies for its operations, the funding of payroll obligations, the funding of on-going business operations and other working capital needs. Absent immediate use of cash collateral for its continuing business operations, the Debtor will be unable to pay essential operating expenses and purchase supplies, and therefore, may be unable to continue to conduct its business pending the final hearing on the relief requested herein.

    16.  The Debtor's proposed interim Order (the "Interim Cash Collateral Order") in

7

connection with this Motion is attached hereto as Exhibit B.

WHEREFORE, the Debtor respectfully requests that the Court:

A. Conduct an emergency hearing on this Motion in accordance with sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014;

B. Determine that the Debtor has given adequate notice of the Motion for interim use of Cash Collateral;

C. Enter the Interim Cash Collateral Order approving the use of Cash Collateral as set forth herein on an interim basis for cause shown;

D. Authorize the Debtor, immediately and on an ongoing basis until the hearing date set for Final use of cash collateral, to use any and all of the cash proceeds Cash Collateral to pay the ordinary expenses of operating its business and to fund the administrative expenses of this case in accordance with the Budget attached hereto as Exhibit A;

E. Set this Motion for a final hearing upon due notice, in accordance with sections 105, 361 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014; and

F. Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted:

Date: June 6, 2025

/s/ Demetrius J. Parrish, Jr.
Demetrius J. Parrish, Jr., Esquire
7715 Crittenden Street, No. 360
Philadelphia, Pa. 19118
(215) 735 - 3377/(215) 827 - 5420 fax
Email:djpesq@gmail.com